1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10

11   CATHY A. GOMEZ,                    )      No. EDCV 05-1175-RC
                                        )
12            Plaintiff,                )
                                        )      OPINION AND ORDER
13       v.                             )
                                        )
14   MICHAEL J. ASTRUE,[1]              )
     Commissioner of Social Security,   )
15                                      )
              Defendant.                )
16   _____ )

17

18      Plaintiff Cathy A. Gomez filed a complaint on January 6, 2006,

19   seeking review of the Commissioner's decision denying her application

20   for disability benefits.  The Commissioner answered the complaint on

21   June 15, 2006, and the parties filed a joint stipulation on August 4,

22   2006.

23

24                           **BACKGROUND**

25                               **I**

26      On May 17, 2001, plaintiff filed an application for disability

27   _____

28      [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue
     is substituted as the defendant in the action.

benefits under the Supplemental Security Income ("SSI") program of

Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), claiming an

inability to work since November 13, 2000, due to depression, pain in

her neck, back, shoulder and arm, and breast problems.  Certified

Administrative Record ("A.R.") 92-100, 114.  The plaintiff's

application was initially denied on August 16, 2001, and was denied

again on October 23, 2001, following reconsideration.  A.R. 43-52.

The plaintiff then requested an administrative hearing, which was held

before Administrative Law Judge F. Keith Varni ("the ALJ") on

September 13, 2002.  A.R. 53-54, 344-78.  On September 27, 2002, the

ALJ issued a decision finding plaintiff is not disabled.  A.R. 35-42.

The plaintiff appealed this decision to the Appeals Council, which, on

February 25, 2003, granted plaintiff's request for review and remanded

the matter to the ALJ for further proceedings.  A.R. 64-67, 84-87.  On

September 8, 2003, the ALJ issued a decision again finding plaintiff

is not disabled.  A.R. 13-21.  The plaintiff appealed the decision to

the Appeals Council, which denied plaintiff's request for review on

December 1, 2005.  A.R. 3-12.

**II**

The plaintiff was born August 9, 1952; she is currently 55 years

old.  A.R. 92, 96, 100, 165, 295.  The plaintiff has an eleventh-grade

education and has previously worked as a clinic assistant and a home

health caregiver.  A.R. 115, 120, 123-30.

Between July 31, 2000, and January 29, 2002,[2] plaintiff received

---

[2]  Although plaintiff has both physical and mental
complaints, this opinion addresses only her physical complaints.

2

treatment at Kaiser Permanente, where she was diagnosed with

depression, acute stress, chronic headaches, fibromyalgia, cervical

spine degenerative joint disease, and left shoulder pain, among other

conditions.  A.R. 81, 192-257, 259-60, 264-87.  Cervical spine x-rays

taken September 26, 2000, revealed spasm with straightening of the

cervical spine, degenerative arthritic changes with anterior

osteophytes[3] and minimal posterior osteophytes at C4, C5 and C6, with

moderate narrowing of the disc space between C4-C5 and mild narrowing

of the bilateral foramen between C4-C5 probably secondary to minimal

protrusion of posterior osteophytes at those levels, minimal narrowing

of the disc space between C5-C6, and bilateral cervical ribs, right

more than left.  A.R. 255.  On December 31, 2000, plaintiff had a

cervical spine MRI, which revealed: a degree of degenerative change of

the disc interspace at C4-C5, with decrease in disc height, hydration,

generalized bulging of the annulus fibrosus, and midline focal

protrusion causing contouring and obliteration of the ventral aspect

of the thecal sac and slight deformity of the cord, which is contoured

ventrally, and mild hypertrophy[4] of the uncoverterbral joint causing

minimal contouring upon the neural foramina bilaterally; a moderate

degree of degenerative change of the disc interspace at C5-C6, with

decrease in disc height, hydration, focal protrusion causing

indentation upon the ventral aspect of the thecal sac and of the cord

and some minimal contouring of the neural foramina bilaterally; and a

---

[3]   An osteophyte is "a bony excrescence or osseous outgrowth."  Dorland's Illustrated Medical Dictionary, 1290 (29th ed. 2000).

[4]   Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells." Id. at 859.

1  mild degree of degenerative change at the C6-C7 disc interspace,

2  without significant focal protrusion.  A.R. 242-43.

3

4      The plaintiff received physical therapy at Kaiser between

5  February 20, 2001, and May 15, 2001, with no change in her condition.

6  A.R. 200, 234-37, 239-40, 287.  On December 7, 2001, plaintiff again

7  started a course of physical therapy.  A.R. 281-83.

8

9      On January 29, 2001, Steven T. Guse, M.D., a Kaiser physician,

10  diagnosed plaintiff with myofascial pain syndrome and opined she was

11  disabled and incapable of doing her regular and customary work.  A.R.

12  211-14, 257.  On July 30, 2001, and again on September 10, 2001,

13  plaintiff was found to be completely unable to work.  A.R. 81, 266.

14  On November 13, 2001, Gerald Goodlow, M.D., one of plaintiff's

15  treating physicians at Kaiser, opined plaintiff can frequently lift

16  and/or carry less than 10 pounds, can stand and/or walk for less than

17  2 hours in an 8-hour day, can sit for less than 6 hours in an 8-hour

18  day, can never climb or crawl, can occasionally balance, stoop, kneel

19  or crouch, and has a limited ability to reach and handle due to

20  plaintiff's chronic neck and arm pain from fibromyalgia and

21  degenerative arthritis.  A.R. 259-60.  On January 29, 2002, Dr.

22  Goodlow opined plaintiff is permanently unable to perform any work due

23  to chronic myofascial pain syndrome and fibromyalgia.  A.R. 264.

24

25      On August 14, 2002, plaintiff was examined at Loma Linda

26  University Medical Center, where she was diagnosed with fibromyalgia,

27  //

28  //

4

1  depression, anxiety, malnutrition, dyspepsia,[5] and nicotine

2  dependence, and referred to a pain clinic.  A.R. 68-74, 327-33.  On

3  September 11, 2002, plaintiff was reexamined and it was noted she had

4  an adverse reaction to her psychiatric medication, which made her feel

5  drowsy.  A.R. 76-77, 324.  A cervical spine MRI obtained September 11,

6  2002, demonstrated retrolisthesis[6] of C4 on C5 and C5 on C6, with

7  degenerative disc disease at C4-C5 and C5-C6, foraminal narrowing at

8  C3-C6 on the right and C4-C6 on the left and a small right cervical

9  rib.  A.R. 325.

10

11      Between December 19, 2002, and July 16, 2003, plaintiff received

12  treatment at the Arrowhead Regional Medical Center ("Arrowhead"),

13  where she was diagnosed with fibromyalgia, chronic pain with opioid

14  dependence,[7] cervical spine degenerative joint disease, insomnia and

15  depression, among other conditions.  A.R. 334-43.  On April 7, 2003,

16  David Wong, D.O., one of plaintiff's treating physicians at Arrowhead,

17  opined plaintiff can frequently lift and carry less than 10 pounds,

18  sit, stand and/or walk for less than 2 hours in an 8-hour day, can sit

19  or stand for 30 minutes before having to change position, must walk

20  for 5 minutes every 30 minutes, must be able to shift positions at

21

22      [5]  Dyspepsia is an "impairment of the power or function of
    digestion; usually applied to epigastric discomfort following
23  meals."  Dorland's Illustrated Medical Dictionary at 556.

24      [6]  Retrolisthesis is the "posterior displacement of one
    vertebral body on the subjacent body."  Dorland's Illustrated
25  Medical Dictionary at 1568-69.

26
        [7]  Previously, on November 16, 2001, plaintiff was treated
27  in the emergency room at Kaiser, where she was diagnosed with
    opiate withdrawal after she stopped taking the morphine she had
28  been on for "many months."  A.R. 271-79.

1  will, needs to lie down every 3-4 hours, can occasionally twist,

2  stoop, crouch, and climb stairs, can never climb ladders, kneel or

3  crawl, cannot perform prolonged reaching, handling, fingering, feeling

4  and pushing/pulling, must avoid concentrated exposure to extreme heat

5  or cold, wetness, humidity, noise, fumes, odors, dusts, gases, poor

6  ventilation, etc., and must avoid even moderate exposure to hazards.

7  A.R. 311-13.  Dr. Wong also opined plaintiff would miss work more than

8  3 times a month due to her condition.  A.R. 313.

9

10    On May 3, 2003, Adi Klein, M.D., an internist, examined plaintiff

11  and diagnosed her as having fibromyalgia, with no objective evidence

12  to establish the diagnosis, neck degenerative joint disease, with

13  preserved range of motion, and musculoskeletal neck and upper

14  trapezius pain.  A.R. 288-99.  Dr. Klein opined plaintiff can lift and

15  carry 50 pounds occasionally and 20-25 pounds frequently, she can sit,

16  stand and/or walk for 6 hours in an 8-hour day with appropriate

17  breaks, and she can frequently climb, balance, kneel, crouch, crawl,

18  stoop, and reach in all directions.  A.R. 292, 296-99.

19

20                          **DISCUSSION**

21                              **III**

22    The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

23  review the Commissioner's decision denying plaintiff disability

24  benefits to determine if his findings are supported by substantial

25  evidence and whether the Commissioner used the proper legal standards

26  in reaching his decision.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir.

27  2007); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).

28  //

1    The claimant is "disabled" for the purpose of receiving SSI

2    disability benefits if she is unable to engage in any substantial

3    gainful activity due to an impairment which has lasted, or is expected

4    to last, for a continuous period of at least twelve months.  42 U.S.C.

5    § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

6    burden of establishing a prima facie case of disability." Roberts v.

7    Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

8    (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

9

10    The Commissioner has promulgated regulations establishing a five-

11    step sequential evaluation process for the ALJ to follow in a

12    disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

13    must determine whether the claimant is currently engaged in

14    substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

15    **Second Step**, the ALJ must determine whether the claimant has a severe

16    impairment or combination of impairments significantly limiting her

17    from performing basic work activities.  20 C.F.R. § 416.920(c).  If

18    so, in the **Third Step**, the ALJ must determine whether the claimant has

19    an impairment or combination of impairments that meets or equals the

20    requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §

21    404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the

22    **Fourth Step**, the ALJ must determine whether the claimant has

23    sufficient residual functional capacity despite the impairment or

24    various limitations to perform her past work.  20 C.F.R. § 416.920(f).

25    If not, in **Step Five**, the burden shifts to the Commissioner to show

26    the claimant can perform other work that exists in significant numbers

27    in the national economy.  20 C.F.R. § 416.920(g).

28    //

1    Applying the five-step sequential evaluation process, the ALJ

2  found plaintiff "has not engaged in substantial gainful activity at

3  any time relevant to this decision." (Step One).  The ALJ then found

4  plaintiff "has a questionably 'severe' impairment of the

5  musculoskeletal system" (Step Two); however, she does not have an

6  impairment or combination of impairments that meets or equals a

7  Listing.  (Step Three).  The ALJ next implicitly determined plaintiff

8  cannot perform her past relevant work.[8]  (Step Four).  Finally, the

9  ALJ concluded plaintiff can perform a significant number of jobs in

10 the national economy; therefore, she is not disabled.  (Step Five).

11

12                                **IV**

13   A claimant's residual functional capacity ("RFC") is what she can

14 still do despite her physical, mental, nonexertional, and other

15 limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001);

16 <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

17 the ALJ found plaintiff retains the RFC to perform "simple, repetitive

18 work in a non-public setting at the medium exertional level."[9]  A.R.

19 20.   However, plaintiff contends the ALJ's RFC determination is not

20 supported by substantial evidence because, among other things, the ALJ

21 improperly rejected the opinions of her treating physicians, Drs.

22 _____

23   [8]  The ALJ found plaintiff "has past relevant work as a
   clinic assistant[,]" A.R. 20, but made no Step Four finding as to
24 whether plaintiff can perform this past relevant work.  <u>See</u> <u>id.</u>
   Instead, the ALJ proceeded to Step Five after noting the burden
25 had shifted to the Commissioner.  <u>Id.</u>

26
   [9]  Under Social Security regulations, "[m]edium work
27 involves lifting no more than 50 pounds at a time with frequent
   lifting or carrying of objects weighing up to 25 pounds."  20
28 C.F.R. § 416.967(c).

1 Goodlow and Wong.  The plaintiff is correct.

2

3     The medical opinions of treating physicians are entitled to

4 special weight because the treating physician "is employed to cure and

5 has a greater opportunity to know and observe the patient as an

6 individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

7 Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

8 1999).  Therefore, the ALJ must provide clear and convincing reasons

9 for rejecting the uncontroverted opinion of a treating physician,

10 Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if

11 [a] treating doctor's opinion is contradicted by another doctor, the

12 ALJ may not reject this opinion without providing 'specific and

13 legitimate reasons' supported by substantial evidence in the record."

14 Orn, 495 F.3d at 632 (quoting Reddick, 157 F.3d at 725 (internal

15 quotation marks omitted)); Rollins v. Massanari, 261 F.3d 853, 856

16 (9th Cir. 2001).

17

18     **Dr. Goodlow:**

19     On November 13, 2001, Dr. Goodlow opined plaintiff can frequently

20 lift and/or carry less than 10 pounds, can stand and/or walk for less

21 than 2 hours in an 8-hour day, can sit for less than 6 hours in an 8-

22 hour day, can never climb or crawl, can occasionally balance, stoop,

23 kneel or crouch, and has a limited ability to reach and handle due to

24 chronic neck and arm pain from fibromyalgia and degenerative

25 arthritis.  A.R. 259-60.  However, the ALJ rejected Dr. Goodlow's

26 opinions on the grounds they are: "grossly exaggerated exertional

27 limitations"; "unexplained by [Dr. Goodlow] and unsupported by

28 anything contained in the clinical record or [any] diagnostic study";

1  and because Dr. Goodlow "apparently prescribed morphine for

2  [plaintiff]."  A.R. 42.  On January 29, 2002, Dr. Goodlow completed a

3  form in which he indicated plaintiff is permanently unable to perform

4  any work due to chronic myofascial pain syndrome and fibromyalgia.

5  A.R. 264.  However, the ALJ also rejected Dr. Goodlow's opinion in

6  this form on the grounds it is: conclusory; "not supported or

7  accompanied by any objective evidence"; did not provide any specific

8  limitation on plaintiff's ability to perform work activity; and

9  because "[a] conclusion regarding the ability to work is partially a

10  vocational judgement which is clearly beyond the expertise of the

11  general practitioner completing the form."  A.R. 41-42.  For the

12  reasons discussed herein, the ALJ's reasons are not specific and

13  legitimate since they are not supported by substantial evidence.[10]

14

15      Although, an "ALJ need not accept the opinion of any physician,

16  including a treating physician, if that opinion is brief, conclusory,

17  and inadequately supported by clinical findings[,]" Thomas v.

18  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Bayliss v. Barnhart, 427

19  F.3d 1211, 1216 (9th Cir. 2005), here, Dr. Goodlow's opinions are

20  supported by clinical findings, including several cervical spine MRIs,

21  which show degenerative changes at multiple levels of plaintiff's

22

23      [10]   Nor should this conclusion surprise the Commissioner
    since the ALJ made these findings regarding Dr. Goodlow's
24  opinions in his first decision, which the Appeals Council
    remanded to the ALJ for further proceedings because he failed to
25  "provide an adequate rationale" regarding "the assessments of
    disability provided by Dr. Goodlow. . . ."  A.R. 86.  Despite
26  directions from the Appeals Council on remand, the ALJ failed to
    further address Dr. Goodlow's opinions and, instead, adopted his
27  prior decision, as supplemented on remand; however, the supple-
28  mentation did not address Dr. Goodlow's opinions.  A.R. 13-21.

1  spine.  See A.R. 242-43, 325.  Further, since there are no objective

2  tests for fibromyalgia, the symptoms of which are entirely subjective,

3  it "is diagnosed based on widespread pain with tenderness in at least

4  eleven of eighteen sites known as trigger points."[11]  Brosnahan v.

5  Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003); Benecke v. Barnhart,

6  379 F.3d 587, 589-90 (9th Cir. 2004); Rollins v. Massanari, 261 F.3d

7  853, 855 (9th Cir. 2001).  Here, plaintiff's frequent complaints of

8  pain all over her body and the identification of over eleven

9  fibromyalgia trigger points in her body support Dr. Goodlow's

10  fibromyalgia diagnosis.  See, e.g., A.R. 72, 77, 269, 323-24, 331.

11

12      Furthermore, since the ALJ is not a physician, his apparent

13  disapproval of the treatment of plaintiff with morphine is not a

14  specific and legitimate reason for rejecting Dr. Goodlow's opinions.

15  See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001)

16  (ALJ's concerns and speculations do not constitute substantial, not to

17  mention clear and convincing, reasons for rejecting physician's

18

19      [11]   The American College of Rheumatology's 1990 diagnostic
criteria identify the 18 trigger points as located at: (1-2) the
20  occiput bilaterally at the suboccipital muscle insertions; (3-4)
low cervical bilaterally at the anterior aspects of the
21  intertransverse spaces at C5-C7; (5-6) trapezius bilaterally at
the midpoint of the upper border; (7-8) supraspinatus bilaterally
22  at origins, above the scapula spine near the medial border; (9-
10) second rib bilaterally at the second costochondral junctions,
23  just lateral to the junctions on the upper surfaces; (11-12)
24  lateral epicondyle bilaterally, 2 centimeters distal to the
epicondyles; (13-14) gluteal bilaterally in the upper outer
25  quadrants of the buttocks in the anterior fold of muscle; (15-16)
26  greater trochanter bilaterally, posterior to the trochanteric
prominence; and (17-18) knee bilaterally, at the medial fat pad
27  proximal to the joint line.  (http://www.rheumatology.org/
publications/classification/fibromyalgia/fibro.asp (last visited
28  September 21, 2007)).

1   medical opinion); <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998)

2   (An "'ALJ cannot arbitrarily substitute his own judgment for competent

3   medical opinion. . . [,]'" (citations omitted)); <u>Kemp v. Bowen</u>, 816

4   F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make

5   a final decision concerning disability, he can not interpose his own

6   'medical expertise' over that of a physician. . . .").  Likewise,

7   since Dr. Goodlow provided specific limitations on plaintiff's ability

8   to perform work activity, A.R. 259-60, the ALJ's finding to the

9   contrary is not a specific and legitimate reason for rejecting Dr.

10  Goodlow's opinions.  <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th

11  Cir. 2006).

12

13      Finally, the ALJ's disparagement of Dr. Goodlow as not competent

14  to assess plaintiff's ability to work is not a specific and legitimate

15  reason for rejecting Dr. Goodlow's opinions.[12]  <u>See</u>, e.g., <u>Reddick</u>,

16  157 F.3d at 725 (The ALJ is "'not bound by the uncontroverted opinions

17  of the claimant's physicians on the ultimate issue of disability, but

18  he cannot reject them without presenting clear and convincing reasons

19  for doing so.'" (citations omitted)); <u>Matthews v. Shalala</u>, 10 F.3d

20  678, 680 (9th Cir. 1993) (same).

21

22      [12]  The Commissioner also argues the ALJ properly rejected
23  Dr. Goodlow's opinions by noting Dr. Klein "did not even find
    objective evidence to establish the diagnosis of fibromyalgia."
24  Jt. Stip. at 7:6-20.  However, as discussed above, the ALJ failed
    to address Dr. Goodlow's opinions in his second decision (where
25  he discusses Dr. Klein).  <u>See</u> A.R. 16-21, 38-42.  Therefore, the
26  ALJ never discussed or compared the diagnoses of Dr. Goodlow vis-
    a-vis Dr. Klein, and this Court "cannot affirm the decision of an
27  agency on a ground that the agency did not invoke in making its
    decision."  <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir.
28  2001); <u>Orn</u>, 495 F.3d at 630.

1      For all these reasons, the ALJ failed to provide specific and

2 legitimate reasons for rejecting Dr. Goodlow's opinions, and his

3 adverse determination of Dr. Goodlow's opinions is not supported by

4 substantial evidence.

5

6      **Dr. Wong:**

7      On April 7, 2003, Dr. Wong opined plaintiff can frequently lift

8 and carry less than 10 pounds, sit, stand and/or walk for less than 2

9 hours in an 8-hour day, can sit or stand for 30 minutes before having

10 to change position, must walk for 5 minutes every 30 minutes, must be

11 able to shift positions at will, needs to lie down every 3-4 hours,

12 can occasionally twist, stoop, crouch, and climb stairs, can never

13 climb ladders, kneel or crawl, cannot perform prolonged reaching,

14 handling, fingering, feeling and pushing/pulling, must avoid

15 concentrated exposure to extreme heat or cold, wetness, humidity,

16 noise, fumes, odors, dusts, gases, poor ventilation, etc., must avoid

17 even moderate exposure to hazards, and would miss work more than 3

18 times a month due to her condition.  A.R. 311-13.  However, the ALJ

19 rejected Dr. Wong's opinions on the grounds they are: "egregiously

20 accommodative" because they were "apparently [completed] at the behest

21 of the [plaintiff's] representative"; "completely unsupported by the

22 medical evidence"; and it is "unclear whether Dr. Wong has even seen,

23 let alone treated, [plaintiff]."  A.R. 19.

24

25      First, the last reason is clearly wrong.  The record shows Dr.

26 Wong was one of plaintiff's treating physicians at Arrowhead, having

27 treated plaintiff on multiple occasions, including her most recent

28 visits to Arrowhead, and having prescribed medication to plaintiff.

1 | <u>See</u> A.R. 311-13, 334, 336; <u>Ghokassian v. Shalala</u>, 41 F.3d 1300, 1303

2 | (9th Cir. 1994) (holding physician who saw claimant twice within a 14-

3 | month period and prescribed medication to him was treating physician).

4 | Thus, this reason is not a legitimate reason and is not supported by

5 | the record.

6 |

7 | Moreover, "in the absence of other evidence to undermine the

8 | credibility of a medical report, the purpose for which the report was

9 | obtained does not provide a legitimate basis for rejecting it."

10 | <u>Reddick</u>, 157 F.3d at 726; <u>see</u> <u>also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 832

11 | (9th Cir. 1995) ("The purpose for which medical reports are obtained

12 | does not provide a legitimate basis for rejecting them. . . .  'The

13 | [Commissioner] may not assume that doctors routinely lie in order to

14 | help their patients collect disability benefits.'" (citation

15 | omitted)).  Thus, that the opinion of Dr. Wong, one of plaintiff's

16 | treating doctors, was sought by plaintiff's representative is

17 | immaterial, and this reason also is not a legitimate reason.

18 |

19 | Finally, Dr. Wong diagnosed plaintiff with fibromyalgia, and

20 | based his opinions of her limitations on that diagnosis, which is

21 | supported by the medical evidence in the record, as discussed above.

22 | A.R. 72, 77, 269, 311-13, 323-24, 331, 336.  So the ALJ's statement to

23 | the contrary also is not a legitimate reason.

24 |

25 | In short, the ALJ failed to provide specific and legitimate

26 | reasons for rejecting the medical opinions of Dr. Wong, as well as Dr.

27 | Goodlow.  In light of the ALJ's manifest shortcomings in rejecting the

28 | opinions of plaintiff's treating physicians Drs. Goodlow and Wong, the

14

1 | ALJ's RFC assessment is not supported by substantial evidence.

2

3 | **V**

4 | This Court has discretion to award disability benefits to a

5 | plaintiff when there is no need to remand the case for additional

6 | factual findings.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th

7 | Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001);

8 | see also Benecke, 379 F.3d at 593 ("[W]here the record has been

9 | developed fully and further administrative proceedings would serve no

10 | useful purpose, the district court should remand for an immediate

11 | award of benefits.").

12

13 | Here, "[w]here the [ALJ] fails to provide adequate reasons for

14 | rejecting the opinion of a treating . . . physician, [this Court]

15 | credit[s] that opinion 'as a matter of law.'"  Lester, 81 F.3d at 834

16 | (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).

17 | Crediting Dr. Wong's opinions as true, vocational expert Joseph M.

18 | Mooney testified that an individual with the limitations Dr. Wong

19 | found would be unable to perform substantial gainful activity.  A.R.

20 | 397.  Likewise, if Dr. Goodlow's opinions are credited as true,

21 | plaintiff cannot perform substantial gainful activity for 8 hours a

22 | day, 40 hours a week, or consistently over the course of a month.  See

23 | Benecke, 379 F.3d at 595 (9th Cir. 2004) ("[I]n the unusual case in

24 | which it is clear from the record that the claimant is unable to

25 | perform gainful employment in the national economy, even though the

26 | vocational expert did not address the precise work limitations

27 | established by the improperly discredited testimony, remand for an

28 | immediate award of benefits is appropriate.").  Therefore, properly

1  crediting the opinions of Drs. Goodlow and Wong, plaintiff is disabled

2  and unable to perform work in the national economy.[13]  Thus, the

3  Commissioner has not met his burden in Step Five, and SSI disability

4  benefits should be awarded to plaintiff.

5

6                                    **ORDER**

7       IT IS ORDERED that plaintiff's request for relief be granted, and

8  the Commissioner shall award SSI disability benefits to plaintiff,

9  pursuant to 42 U.S.C. § 1382(a).

10

11  DATE:   Sept. 28, 2007          ___/s/ Rosalyn M. Chapman____
                                        ROSALYN M. CHAPMAN
12                                  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

---

26       [13]  Having reached this conclusion, the Court need not

27  address the other issues plaintiff raises.

28  R&R-MDO\05-1175.mdo
    9/28/07